IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM SMITH, | § |
| Petitioner, | § Civil Action No.:_____ |
| vs. | § Criminal No.: 97-10025-PBS |
| UNITED STATES OF AMERICA, | § |
| Respondent. | § 04 · 11049 PBS |

PETITIONER'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO
VACATE, SET ASIDE, OR CORRECT
SENTENCE, UNDER 28 U.S.C.§2255

NOW COMES petitioner, William Smith, appearing pro
se, and respectfully submits this memorandum of law in support
of his motion to vacate, set aside, or correct his sentence,
in accordance with the provisions of 28 U.S.C.§2255.

Petitioner also seeks leave to submit claims that are
unripe for review, inasmuch as matters pending before a state
court, and the adjudication thereof, will ultimately determine
the constitutionality of the judgment under attack. Such claims
are fully set forth hereinafter.

-a-

## STATEMENT OF JURISDICTION

Petitioner was tried on June 9, 1997, for violation of Title 18 U.S.C. §922(g)(1), Felon in Possession of a firearm, and Possession of Ammunition, in the United States District Court for the District of Massachusetts, before the Honorable District Court Judge Patti B. Saris, under indictment criminal case number 97-10025-PBS, by Jury which found the Petitioner guilty on June 16, 1997.

On August 7, 1998, Petitioner was sentence to 262 months imprisonment, 36 months supervised release and a $100.00 special assessment fee, Petitioner filed motion for new trial at the time of sentencing rescheduling the sentence date to May 19, 1999, Petitioner's motion for new trial was denied and on May 24, 1999, the Petitioner was sentence to the original sentence herein.

Petitioner filed a timely notice of appeal to the United States Court of Appeals for the First Circuit in which the briefing schedule had been delayed on numerous occasion because the trial transcripts was not complete and a vital portion of the transcript was missing by the court reporter.

The Court of Appeals moved to have the District Court attempt to reconstruct the missing portion of the transcript after Petitioner continued objections that he could not receive a fair and reliable decision on appeal without the entire trial records. The trial transcript was never settled because both Court and trial counsel had no independent recollection of the substantive discussions during the trial hearing the Petitioner's

appeal within the First Circuit was denied on June 12, 2002, before the Honorable Judges panel of Boudin, Torruella, Selya, Lynch, Lipez, and Howard, the Petitioner filed a motion for En Banc consideration and was denied on August 29, 2002.

Petitioner filed a timely motion for certiorari that was denied with a unpublished opinion on March 24, 2003, Petitioner filed a motion for rehearing that was denied on May 19, 2003.

It is asserted that the District Court for the District of Massachusetts has jurisdiction to review a final conviction in the District in which the Petitioner was convected and sentenced.

Pursuant to 28 U.S.C. §2255, and the Constitution of the United States of America as the District Court for the District of Massachusetts has jurisdiction over the initial matter pursuant to Federal indictment returned in said District pursuant to 18 U.S.C. §3231.

Petitioner is currently serving his 262 months sentence imprisonment in the custody of the Federal Bureau of Prisons at F.M.C. Devens, in Ayer, Massachusetts where he is being housed and medically treated.

Whereas, final judgment was rendered on May 19, 2003, the Petitioner has until May 19, 2004, to file a timely 28 U.S.C. §2255, which states "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of the date on which the judgement of convection becomes final."

(ii)

STATEMENT OF ISSUES PRESENTED
FOR REVIEW

1.   Whether the indictment should be dismissed pursuant to
     Rule 36 for failure of the United States Attorneys to
     take and properly file their required oath of office,
     28 U.S.C. §544, 5 U.S.C. §3331, §3332, and §2906.

2.   Whether there is a jurisdictional defect requiring a
     dismissal "because the District Court lacked jurisdiction"
     to entertain a criminal case if it appears that the
     government either "lacked the power or the authority
     to prosecute."

3.   Whether AUSA Cabell committed perjury when he made false
     statements and documention at the Grand Jury hearing
     Petitioner used one Joe Turner's identification to rent
     apartment 104 at 33 Wales Street in Dorchester, Mass.,
     violating 18 U.S.C. §1623A and 28 U.S.C. 1746, to get an
     indictment.

4.   Whether the government's witnesses committed perjury
     under oath, and AUSA Richardson committed subornation of
     of perjury, violating 18 U.S.C. §1622 and §1623(A)(C) under
     oath.

5.   Whether the Court, and counsel failure to order a competency
     hearing and secure a mental health evaluation before subpoenaing
     Erica B. Moore from a Mental Hospital is plain error under
     §52(b), to testify at Petitioner's trial, deprived Petitioner
     his Constitutional rights to a fair trial and to effective
     assistance of counsel.

6.   Whether armed career criminal wrongfully applied at sentencing.

7.   Whether the District Court made plain error when enhance Petitioner for drugs and perjury with no indictment or charges at sentencing and with no requiring advance notice and a statement of reason for departing upward, pursuant to 18 U.S.C. §3553(b), U.S.S.G. §2k2.1 and 2k2.1(a)(2), §851.

8.   Whether Debroah Anderson and Dwayne Sawyer, told the truth under oath.

9.   Whether Petitioner's counsel's rendered Constitutionally ineffective assistance at trial and sentencing and appeal.

## STATEMENT OF THE CASE

On or about November 5, 1996, a Search Warrant was executed on apartment 104 at 33 Wales Street in Dorchester, Massachusetts, by Boston Police. The apartment was leased to a Joesph Turner, Petitioner another individual, Dwayne Sawyer, and Deborah Anderson (a Boston Police Officer)who is a friend of the Petitioner were present at the resident during the time of the search.

Recovered during the search was a Taurus .38 caliber revolver, 12 rounds of .38 caliber ammunition and 15 rounds of .357 magnum caliber ammunition.

On January 29, 1997, a Federal Grand Jury indicted Petitioner on one count of being a Felon in possession of a weapon and ammunition, in violation of Title 18 U.S.C. §922(g)(1).

On June 16, 1997, Petitioner was found guilty by a Jury in the United States District Court for the District of Massachusetts

-2-

before the Honorable District Court Judge Patti B. Saris.

On August 7, 1998, the Petitioner was sentenced to serve 262 months imprisonment with 36 months supervised release and a $100.00 special assessment fee.

Petitioner requested for new trial at the day of sentencing causing the sentencing to be rescheduled to May 19, 1999, in which the District Court denied the Petitioner motion for new trial and resentenced the Petitioner to the same sentence.

Petitioner filed a timely notice of appeal in which there was delay in the briefing schedule due to a vital portion of the trial transcripts was lost by the Court Reporter.

The Appeal Court moved to have the District Court attempt to reconstruct the missing portion of the trial through Petitioner's objection that he could not obtain a fair and reliable decision on Appeal without the entire trial record.

The District Court was unable to approve or settle any substitute for a verbatim transcript because both the Court and trial counsel had no independent recollection of the substantive discussion during the trial hearing.

The vital portion of the trial transcripts that was missing Concerned Evidence that was used to enhance Petitioner's sentence above and beyond the applicable 52-71 months.

Under the guidelines and statute 2k2.1 Base offense level 24 with prior felonies and one open case, a 1992 case, and is on appeal as this action go's forward.

On or about June 12, 2002, the First Circuit Court of Appeals affirmed the conviction and sentence in a Published Opinion United States v. William Smith.

Petitioner filed for En Banc consideration and was denied on August 29, 2003, in which the Petitioner then filed a motion for certiorari that was also denied on March 24, 2003, with an unpublished opinion.

Petitioner case was dismissed at the State Level after speedy trial and a status hearing, the government indicted the Petitioner on one count for felon in possession of a handgun.

The Boston Police never came to Court with any lab reports or Marijuana, or Cocaine. The date of dismissal of the State case was on May 9, 1997, after Federal Indictment on January 29, 1997.

Petitioner is now serving his 262 month imprisonment in the custody of the Federal Bureau of Prisons for the Department of Justice at F.M.C. Devens, in Ayer, Massachusetts.

STATEMENT OF FACTS

The Petitioner was arrested on or about November 5, 1996, by officers of the Boston Police Department, pursuant to the execution of the search warrant from the Dorchester District Court. The search warrant was for 33 Wales Street, apartment 104, in Dorchester. The defendant was subsequently charged with the offenses of possession of a firearm, code 702 C.269, section 10(a) and possession of ammunition, code 907(a) C.269, section 10, and alleged possession of a class D substance, code 826(c) 94(c) section 3. The Petitioner was released on $2,500.00 bail on the District Court charges. As a result of the arrest, $1,271.00 in U.S. currency was seized from the Petitioner.

-4-

On November 9, 1996, Assistant District Attorney of Suffolk County, Robert D. Canty Jr. filed a complaint for forfeiture of the seized U.S. currency, civil action Number 96-6445F.

On January 30, 1997, Petitioner was appointed Attorney J. Martin Richey, Esq. to represent him in his Federal case, Attorney Richey filed a motion to remove default and stay the proceeding on March 20, 1997, making him attorney for both the federal and the State civil cases.

During the federal criminal trial, Attorney Richey allowed into evidence, the money from the State civil case that was an open matter before the courts, case number SJC-08399.

Petitioner's knowledge of Erica B. Moore's mental health background and his continuing to help and support her to stop her cocaine addition by placing her in Norcap Detox Hospital, center for the mentally ill. Petitioner also assisted her by taking her to Mass Health to get her medications.

When Erica needed a place to live, Petitioner got her a place with his friend Boston Police Officer Debroah Anderson, at 23 N. Glenway St, in Randolph, MA. when Ms. Anderson put Erica out after a fight for stealing her car and jewelry, to buy drugs and was arrested for driving Ms. Anderson's car the Petitioner put up bail for Ms. Moore to get her out of jail.

On October 18, 1996, Ms. Moore began to live at 33 Wales St., apartment 309, in Dorchester in which Ms. Moore and her girl friend were put out for none payment of rent.

Petitioner found Ms. Moore a place to stay with his friend's son, Michael Davis, at 16 Astoria St., Ms. Moore's payee Vera Petty Johnson was told by the Petitioner not to write anymore

checks out to Ms. Moore, unless it is for food or rent, because
she is taking her money and buying drugs, Ms. Moore was also having
people to call Ms. Johnson to say that she owes them money,
so she can get Ms. Johnson to give her more money to buy drugs.

On October 22, 1996, Detective Crowley and Greeley of the
Boston Police received a phone call from Ms. Moore telling
them that she has observed a Boston Police Officer named
Debroah Anderson purchase cocaine from a black male named
Smitty, at 33 Wales St. apartment 104.

Ms. Moore allegedly made three(3) controlled purchase when
she was not working for the Police, she allegedly claimed that
she saw a handgun with a brown handle on the couch beside the
Petitioner. On that occasion, the Petitioner looked at her and
then the handgun, and this was on the the fourth(4th) buy when
she was not working for Boston Police.

Boston Police paid Ms. Moore the first day that she met with
them $40.00 and asked her if she would work for them. The case
was dismissed at the State level after a speedy trial and a
status hearing, and the Boston Police never came to court
with any lab reports or marijuana, or cocaine.

The State charges was dismissed on May 9, 1997, after which
a Federal indictment was brought against the Petitioner on
January 29, 1997, in which the Petitioner pleaded not guilty
and on June 16, 1997, the Petitioner was found guilty by a
jury of being in possession of a firearm, in violation of
18 U.S.C. §922(g)(1) and possession of ammunition. The trial
commenced on June 9, 1997, and the Petitioner was sentence on
May 24, 1999 to 262 months, Petitioner is now serving his

-6-

term at the F.M.C. Devens, in Ayer, Massachusetts.

The United States Attorneys fail to take the required oath of office is a jurisdictional defect, because the District Court lacks jurisdiction to entertain a criminal case because the government either lacked the power or the authority to prosecute.

United States Assistant Attorney D. Cabell committed perjury when he made false documention and statements at grand jury hearing to get an indictment.

the government and court appointed counsel fail to order a competency hearing and secure a mental health evaluation before subpoenaing Erica B. Moore from a mental hospital to testify at Petitioner's trial.

The Court applied the armed career criminal wrongfully at sentencing .

The District Court and Defense counsel made a plain error when enhance Petitioner for drugs and subornation of perjury with no indictment or charges at sentencing and with no requiring advance notice and a statement of reason for departing upward.

Petitioner's witness Police Officer Deborah Anderson and Dwayne Sawyer told under oath that Petitioner did not know anything about the handgun, and that Ms. Anderson never sent anyone to buy drugs from the Petitioner.

Defense Counsel was ineffective, and rendered Constitutionally ineffective assistance at the Petitioner's trial, sentencing, and appeal.

-7-

## SUMMARY OF ARGUMENT

1.  The indictment should be dismiss pursuant to Rule 36 for
    failure of U.S. Attorneys to take and file required oath
    of office, 28 U.S.C. §544, 5 U.S.C. §3331, §3332, and
    §2906.

2.  The District Court has a jurisdictional defect requiring
    dismissal because the court lacks jurisdiction to entertain
    a criminal case if it appears that the government either
    lacked the power or the authority to prosecute.

3.  A.U.S.A. Cabelt committed perjury when he made false statements
    and documention at the grand jury hearing violating 18 U.S.C.
    §1632(a) and 28 U.S.C. §1746, to get an indiction.

4.  The government witnesses committed perjury under oath and
    A.U.S.A. Richardson committed subornation of perjury 18 U.S.C.
    §1622 and §1623(a)(c).

5.  The government, court and defense counsel failed to order a
    competency hearing and to secure a mental health evaluation.

6.  Armed career criminal wrongfully applied.

7.  The District Court and defense counsel made a plain error
    when Petitioner was enhance without no requiring advance
    notice and a statement of reason for departing upward for
    drugs and subornation of perjury , with no indictment of
    charges for drugs or perjury before trial, §3553(b), §851
    but enhance Petitioner the drug at sentencing.

8.  Police officer Deborah Anderson and Dwayne Sawyer told the
    truth under oath in court and at Police hearing.

9.  Petitioner's counsels rendered constitutionally ineffective
    assistance at trial, sentencing, and on appeal.

-8-

## ARGUMENT 1

The indictment should be dismissed pursuant to Rule 36 for failure of United States Attorneys to take and file the required, oath of office base on 28 U.S.C. §544, 5 U.S.C. §2906, §3331, and §332.

The appointed interm, Donald K. Stern, Donald Cabell, and Robert E. Richardson, all were Attorneys for the Government at the time of the indictment case number 97-10025PSB. These individuals failed to take and file the required oath of office and their failure to "file" the required "affidavit" within (30) days of their appointment to the office of the United States Attorneys a required by statute cased a defect of the indictment creating a subject-matter jurisdiction.

These individuals were appointed and are officers that are required to take and file an oath of office to qualify for their prospective positions and failure to do so devoids them of authority to act as Attorneys for the Government.

## ARGUMENT 2

The District Court has a jurisdictional defect requiring dismissal because the Court lacks jurisdiction to entertain a criminal case if it appears that the government either lacked the power or the authority to prosecute.

Petitioner was indicted for felon in possession of a weapon and ammunition, violating 18 U.S.C. §922(g)(1), in the United States District Court for the District of Massachusetts.

This action was brought by individuals that was devoid of

authority to act as an Attorney for the Government causing a
fundamental defect in the original indictment.

Donald K. Stern, Donald Cabell, nor Robert E. Richardson
had the authority to approve an indictment to be presented to
the grand jury because neither had taken and "filed," as
required, an oath of office.

Under Title 5 U.S.C. §2906, "Custody of the oath," it
states "...to which the office pertains," there is no oath
of office filed in the District of Massachusetts.

It is required that each and every U.S. Attorney to file
their oath of office within (30) days of their appointment
under Title 28 U.S.C. §544, and Title 5 U.S.C. §3332 and
they are deliver such oath by him to, and preserved by, the
House of Congress, agency, or court to which the office
pertains, therefore, neither are U.S. Attorneys with the
authority to approve anything.

The requirement to take and file an oath of office was
enacted by Congress through statutes, 28 U.S.C. §544, 5 U.S.C.
§3331, §3332, and §2906.

An individual absent taking of the oath and "filing," these
individuals in question was not an "Attorney" for the Government,
and was devoid of the authority to act as such.

These individuals did not legally "qualify" for that office
and has no authority to act as an "Attorney" for the Government
with the U.S. Attorneys office and anyone he appoints to said
office as an Assistant.

-10-

Under <u>United States v. Pignatiello</u>, 582 F.Supp. 251 (10th Cir. 1984), if the U.S. Attorney did not file his oath of office affidavit did not legally qualify him for that office and he has no authority to act as an Attorney for the Government to execute faithfully his duties of office without filing such affidavit as required.

The statute exist as indication of authority, not as a limitation, the person devoid of authority if an individual is in violation of the applicable statute, under Title 5 U.S.C. §3332, clearly states "oath" must be filed to secure the appointment of such office, there is sound policy support for requiring the oath of office, it solemnizes the appointment and sensitizes the appointed person to the obligations and limitations of the office.

The violation of this clear requirement of Title 5 U.S.C. §3331, and §544, that U.S. Attorneys take an oath to execute faithfully his duties, prior to assuming his duties and filing said oath in accord with Title 5 U.S.C.A. §2906, warrants dismissal of the indictment. <u>See</u>: <u>United States v. Dulski</u>, 395 F.Supp. 1250 (1975).

These affidavits are in the District of Columbia and not in the District of Massachusetts in which this office pertains, the filing with the District Court Clerk of Courts confirms the authenticated affidavit of the appointment, but whereas, these individuals did not file with the District Court, nor with the U.S. Attorneys Office in which the office pertains, even when Congress choose not to rely on the acting official's good faith alone, judicial review is not the only available safeguard,

-11-

and Congress set these laws to keep balance within the courts
so that the Justice system would not be used for personal
gain, this is the purpose for the official's to take the
oath of office, it is to be sworn into upholding the laws
set by Congress and followed by those of office who swore
to do so.

Failure of U.S. Attorney Donald K. Stern, Assistant U.S.
Attorney Donald Cabell, and Assistant U.S. Attorney Robert E.
Richardson to execute §3331's oath of office and "filing" their
"affidavit" within (30) days themselves under Title 5 U.S.C.
§2906, denies these individuals of the authority to prosecute.

"No person shall be held to answer for a capital, or otherwise
infamous crime, unless on a presentiment or indictment of a Grand
Jury." U.S. Const. Ament. VI. the indictment presented to the
Grand Juries in the Petitioner's case, were approved by U.S.
Attorney Donald K. Stern, Assistant U.S. Attorney Donald Cabell,
and Assistant U.S. Attorney Robert E. Richardson, therefore,
invalid and in sufficient because they were not U.S. Attorneys,
absent of compliance with, Title 28 U.S.C. §544, 5 U.S.C. §3331,
§3332, and §2906. The "True Bill" that was presented was not a
True Bill whereas, these individuals lacked the authority to
prosecute.

The indictment alleged that they were approved by U.S.
Attorney Donald K. Stern, but the indictment presented were not
approved by a legal U.S. Attorneys therefore, lacking an essential
element. See: United States v. Crockett, 812 F.2d 626, 696 (10th
Cir. 1987), wherein the Court states; "the failure of the indictment
to allege all the essential elements is a jurisdictional defect

-12-

requiring dismissal..." "This type of fundamental defect cannot
be cured by the absence of prejudice to the defendant..." also
in United States v. Prentiss, 206 F.3d 960 (10th Cir. 2000) at
965, Many courts have held the failure in filing the oath of
office prevents jurisdiction in violation of authority to
prosecute.

"The Congress has used plain language to require that an
Attorney appointed under Title 28 U.S.C. §543, take an oath
to execute faithfully his duties "before taking office." See:
United States v. Pignatiello, Supra.

The violation of is clear requirement of Title 5 U.S.C.
§544 that U.S. Attorney take an oath to execute faithfully
his duties as an Attorney for the Government, prior to
assuming his duties and filing said oath in accord with
Title 5 U.S.C. §2906, warrants dismissal of the indictment.

Failure of the U.S. Attorney Donald K. Stern following
the mandated statute set by Congress that covers these
appointed officials to take and file an oath of office
devoids him of all authority to act as an Attorney for
the Government by not qualifying for the appointed position.

It was required that within 30 days after the effective
date of his appointment, U.S. Attorney Donald K. Stern "shall
file" with the oath of office required by Title 5 U.S.C.A.
§3331, an affidavit that neither him nor, anyone acting in
his behalf has given, transferred, promised, or paid any
consideration for or in the expectation or hope of receiving
assistance in securing the appointment. See: 5 U.S.C.A. §3332.

In term familiar to law of agency, the oath is evidence of actual authority of the Attorneys as agents and thereby avoids disputes which could be generated by reliance upon some apparent authority. See Pignatiello, 253.

A District Court lacks "jurisdiction" to entertain a criminal case if it appears that the government either "lacked the power or the authority to prosecute." See: United States v. Suescan, 237 F.3d 1284 (11th Cir. 2001).

Donald K. Stern, Donald Cabell, and Robert E. Richardson, are and were aware of the requirements of the above statutes, their negligence and refusal to comply with Congressional statutes requires dismissal of the indictment.

Wherefore, the Honorable Court should dismiss the indictment based upon the circumstances described above, or conviction be vacated or set aside for judicial review.

Petitioner has received copies of the appointment affidavits of these individuals that are clearly erroneous and where not in the district in which the office pertained.

### ARGUMENT 3

The government used false documentation and statements to receive the indictment and warrant on the Petitioner.

A.U.S.A. Cabell told grand jury, that the Petitioner used Joe Turner's I.D. to rent the apartment 104 at 33 Wales Street, and that the Petitioner's alias was Joe Turner and to get arrest warrant in that name to make and mislead the grand jury to believe the Petitioner was the true renter of apartment 104 at 33 Wales

-14-

Street, in Dorchester of Massachusetts, making these statements
to get an indictment is reversible error in violation of 18
U.S.C. §1623A and 28 U.S.C. §1746, false decarations before
a grand jury or court to secure an indictment or warrant.

Petitioner will support his argument with evidence that at
the time of the indictment A.U.S.A. Cabell knew that Joe Turner
rented the apartment at 33 Wales Street, in Dorchester of
Massachusetts, because the Boston Police had all the information
from the Management company who had rented the apartment to
Joe Turner. See: Detention hearing, dated Thursday, February 6,
1997(Tr. p. 19-21) with evidence criminal case cover sheet,
base upon that reason alone, this case should be vacated.

This was clearly prosecutional misconduct that the
Prosecutor commented upon the Petitioner and the grand
the grand jury.

### ARGUMENT 4

Government violated Title 18 U.S.C. §1622, Subornation
of perjury and malicious Prosecution.

Government is guilty of subornation of perjury Title 18
U.S.C. §1622, §1623(A)(C) under oath with witness.

The government committed perjury under oath when they
testified that Harry Cataldo the S.W.A.T. team leader was
the first one to enter the apartment 104 at 33 Wales Street,
he said although he went into the living room of the apartment
he did not see the blue knapsack or any of its contents. He
also states that this is because the entry team only looks

-15-

for people and not for items (Tr. 6/13/97 at 26).

Officer Darren Greeley was one of the officers that had
entered the apartment at the time of the search, but the
handgun it self was suppose to be in plain view at 33 Wales
Street apartment 104, and the search team leader also was
supposed to have been told by Ms. Moore that a gun was in
the apartment yet, officer Greeley did not tell anyone that
their was a gun in the apartment and did not find one himself
or informed them that someone told him that the Petitioner had
a handgun for their safety, he reported this information some
one(1) day later after the search. Officer Greeley said that ATF
Agent Jerry Gallo found the wallet which contains Mr. Richard
Bouvill's license to carry a handgun, but the handgun was
suppose to be in plain view at the time of the search of the
apartment 104 at 33 Wales St., in Dorchester. This contradicted
what Agent Gallo had stated, that he knew nothing about this
case until the Boston Police Department brought the case to
him several months later, and the only thing that he did was
arrest the Petitioner when the indictment came down, (Tr. 2/6/97 12),
Agent Gallo said this at the Petitioner's detention hearing.

Mary Crowley stated that Ms. Moore stated that the Petitioner
told her that the Petitioner was robbed at the apartment 104 at
33 Wales St., in Dorchester, this was a phone conversation, but
someone was to have told Ms. Moore that the Petitioner was robbed
this was hearsay, at motion to suppress hearing Ms. Crowley states
that she field tested the drugs for crack cocaine on the 5th of
November 1996, but officer Greeley stated at the Petitioner's
trial that he field tested the drugs on the scene for powder

cocaine on November 5, 1996, both these statements was under
oath, and they contradict one another.

John Donovan falsified photos and evidence by putting items
where he wanted them as he took the photos, the firearm I.D.,
welfare card, medication bottle are not on the Police report
sheet. This is a violation of 28 U.S.C. §1746 and §1623, John
Donovan was the evidence Officer that was given the wallet in
a plastic bag and he put his name on the bag and took the picture
of the contents. John Donovan stated that he did not know who
gave him the wallet and he took pictures of the blue knapsack
and its contents, but he did not see the handgun in plain view.

None of the evidence used at the Petitioner's trial, was
on file on November 5, 1996, in the Boston Police report sheet
Firearm I.D., medication bottle, and the welfare card.

Larry Hoffman stated that he found the handgun in plain view,
after ten(10) S.W.A.T. team officers secured the apartment 104
at 33 Wales Street in Dorchester. A six(6) man search team of
officers searched the apartment which took 30 minutes and
Officer Hoffman who stated he was the last officer to enter the
apartment to find the gun in plain view, 15 minutes after all
the officers entered the apartment, but he was the only one
that saw the handgun in plain view on the floor. (Tr. day 2, pg.
70, lines 2-5). With a six(6) man search team of Police Officers
standing over the handgun in plain view that means that the
handgun was never there on the floor in plain view, was placed
there after.

Ms. Moore, the government's chief witness made two inconsistent
statements, violating 18 U.S.C. §1623(c) during direct and

-17-

at cross-examination, stating that she brought drugs from the
Petitioner on direct examination, but at cross-examination she
stated that she could not buy drugs from Petitioner, she had
to pick up an ex-boyfriend who would pick up another ex-boyfriend
named Stephen to make the purchase from the Petitioner. See:
(Tr. 5, pg.28, lines 17-20)(day 5 of trial pg.57-58). That
means she did not see any handgun in the Petitioner's apartment
in plain view. See: United States v. Jaramillo, 69 F.3d 388 9th
Cir. 1995.

Richard Bovill was a fugitive from justice and was permitted
by the government to testify and at cross-examination it came out
that he had an outstanding warrant and was allowed to leave the
court room without being arrested by the Boston Police or Federal
authorities for his testimony.(Tr. day 3 of the trial pg.92-96).

The government violated 18 U.S.C. §1622, and 28 U.S.C. §1746,
subornation of perjury when they knowingly had these individuals
to testify falsely and made false documentation.


**ARGUMENT 5**

The government's failure to order competency hearing for
Ms. Erica Moore, before subpoenaing her from a Mental Health
Hospital to testify is a plain error and trial Counsel's
failure to secure a Mental Health evaluation of Ms. Moore, who
suffers from long standing Bi-polar illness and recurrent of
non-compliance with her medication. This puts her in a mental
state of depression, when she smoking cocaine, she becomes
manic-depressive and becomes homicidal and suicidal, her
judgement is poor, insight is poor. In the past she has admitted

to having vague homicidal ideation towards her ex-boyfriend,
mother and also sister. Ms. Moore stabbed a female in 1992,
serverly injuring herself and wishing she was never born. She
has a cocaine habit between $100.00 to $200.00 dollars a day
up to $1000.00 in a week. When she is on her medication she
would be on lithim 600mg, twice a day, trilafon 4mg, 12mg, and
900mg depakote 750mg when she is non-compliant.

During these times, she will have auditory hallucinations
and visual hallucinations, A.U.S.A. Richardson subpoena Ms.
Moore to testify from a mental health center, without disclosing
all of Ms. Moore's Psychological evaluation to the defense, this
is a clear violation of due process.

Ms. Erica Moore's statements are products of coercion or
suggestions by the A.U.S.A. and the Boston Police because she
changed her statements at cross-examination by the Petitioner's
Attorney Martin J. Richey. See: Micheals, 642 A.2d at 138 L.Ed 83
citing; Simmons v. United States, 310 U.S. 377, 384 (1968), and
Ms. Moore is mentally disabled as a result of her chronic substance
abuse. Inquiry into these areas must be through, Crosby, 149 U.S.
App. DC at 308, 462 F.2d at 1203. At which time a competency
hearing may include examination of medical records, to see could
or is she competent to be a witness against the Petitioner. See:
generally Vereen, 587 A.2d 456, denial of medical records and
exclusion of expert testimony was abuse of discreation where
witness acknowledged having premonition and visual hallucinations.
In Collins v. United States, 491 A.2d at 484, in camera inspection
of records, the part that was shown did not show that witness had
suffered or being treated for mental illness. In Benn, 155 U.S.

-19-

App. DC at 104, 476 F.2d at 1131, the court relied on Ms. Moore's key testimony for the government's whole case.

A.U.S.A. Richardson who is not a psychologist or an expert witness on mental health issues, should have had an psychiatric examination done by both them and the defense.

A.U.S.A. Richardson, violated Ms. Erica Moore's Fifth Amendment right against self-incrimination, when a witness involuntarily called as a witness for the government, to answer questions and testify in a criminal proceeding that would incriminate her. Ms. Moore was on probation and was using drugs at the time and still the government subpoena her allowing her to incriminate herself as to her usage while on probation. See: Lefkowitz v. Turley, 414 U.S. 70, 77 (1973), in which the Court stated that a person in Ms. Moore's position, has the right and priveledge not to incriminate herself. This applies whether the potentially incriminating questions and answer referring to her past, present or prospective conduct provided the hazard of incrimination. This is exactly the case here at bar, Ms. Moore's testimony was not trifling or imaginary to Ms. Moore's due process rights protection.

Attorney Martin J. Richey did not call or use an expert witness to testify about Ms. Moore's mental-illness and history, nor would Counsel even give up Ms. Moore's mental heath records and Attorney Randolph Gioia would not order such records, nor have Ms. Moore tested for mental health, both attorneys provided ineffective assistance to the Petitioner.

As a preliminary matter, all criminal defendants enjoy the right to effective assistance of counsel during all critical

-20-

stages of the criminal process. See: Strickland v. Washington, 466 U.S. 668 (1984). Moreover, the due process clause entitles defendant in criminal cases to fundamentally fair procedures. "It is fundamentally unfair for a prosecutor to knowingly present perjury to a jury." In United States v. LaPage, 231 F.3d 488, 491 (9th Cir. 2000). The Supreme Court has long since made it clear that "a conviction obtained through the use of false evidence, known to be such by representatives of the state, must fall under the Fourteenth Amendment." See: Napue v. Illiniois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

In the present case, the government introduced the testimony of an individual purporting to be Charles Callauan, the Manager at a local gun store and licensed firearm dealer.

More specifically, Mr. Callauan testified to having sold the particular firearm at issue in this case to an unknown person.

Additionally, the government introduced an over-the-counter transfer transaction document which purported to support the testimony of Mr. Callauan. See: Government Exhibit 24, annexed hereto. However, additional over-the-counter transfer documents, bearing the signature of Charles Callauan clearly indicated, even to the naked and untrained-eye, that the authors are not the same.

The evidence in question was clearly prejudicial in that it went to the heart of the government case against this petitioner.

The government adduced testimony from Mr. Bovill which tended to establish that Petitioner might have taken possession

of the weapon from one of the locations frequented by both
Petitioner and himself. This evidence was completely fabricated,
and the government was well aware of the fact that Petitioner,
who is actually innocent, had never possessed the firearm, and
that the firearm had not been sold to, Mr. Bovill. The documents,
as noted, tending to support the alleged sale were fabricated,
and the individual who testified during the trial was not the
individual who had sold the firearm to Mr. Bovill previously
and the government knew that.

Unless the introduction of false testimony and documentary
evidence was harmless beyond a reasonable doubt, the judgement
must be reversed. See: United States v. Bagley, 473 U.S. 667,
679 n.9, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In the present
case, the introduction of gross inflammatory and materially false
documentary evidence, coupled with equally prejudicial perjuried
testimony warrants an order vacating the judgement in the interest
of justice.

Notably, counsel failed to lodge an objection to this clearly
falsified evidence. Additionally, he failed to appeal from the
error. Consequently, his failure resulted in the deprivation of
Petitioner's right to effective assistance of counsel as guaranteed
by the Sixth Amendment of the United States Constitution. Accordingly,
the judgment of conviction should be vacated, and this matter should
be remanded for a new trial.

### ARGUMENT 6

If the government would had been in accordings with the
law trying to enhance Petitioner before trial they would had

filed a information 21 U.S.C. §851 motion proceedings to
establish prior convictions at which they did violate the
laws set by Congress and sign by the President of the United
States.

A.U.S.A. Robert E. Richardson, and Donald L. Cabell knew
before time of trial to file an information 21 U.S.C. §851(A)(1)
and a statement of reason no person who stand convicted of an
offense under this part shall be sentenced to increased punishment
by reason one or more prior convictions, unless before trial, or
before entry of a plea of guilty, the U.S. Attorney files an
information with the Court, and serves a copy of such information
on the person or counsel for the person, stating in writing the
prior convictions to be relied upon a showing by the U.S. Attorney
that facts regarding prior convictions could not with due diligence
be obtained prior to trial, the Court may postpone the trial.

> §851(2), An information may not be filed under
> this section if the increased punishment for a
> terms in excess of three(3) years unless the
> person either waived or was afforded prosecution
> by indictment for the offense for which such
> increased punishment may be imposed.

Petitioner, would be enhance from criminal history 3 and level
24, to criminal history 6 and level 34 armed career criminal.

the present case is a classic case in which "the prosecutor
charged the Petitioner with one crime, then spent days of Court
time proving other crimes that were never approved by the
grand jury, as to which the Petitioner had no notice in the
pleadings and no opportunity to prepare to meet through discovery
or investigation. The fiction that supports this practice is

that the evidence proves some element of the offense that the
Petitioner may not even be disputing. The real purpose of such
proof is to permit the jury to convict the Petitioner of a crime
with which he was never charged."

The Probation officer, the government and trial court made
a plain error, when they enhanced the Petitioner 4 levels for
cocaine, 4 levels for marijuana and 2 levels for perjury, with
no drug charges or lab reports or any indictments or relevant
conduct. Also enhanced the Petitioner to armed career criminal
and cases related and open cases.

Petitioner is arguing that the first P.S.I. of July 1997,
was based on offense level 24 with 2 levels for a stolen firearm
and aiding and abetting 2 levels, criminal history 3 brought the
level to 28 and history 3. The second P.S.I. changed from level
28 to 30, with 2 levels for stolen firearm and 4 levels for
possession of marijuana with the intent to distribute. The third
P.S.I. changed in August 6, 1998, 14 months from the original
base offense level of 24, on the day of sentencing to level 34
and history 6 with 2 levels for perjury, 18 U.S.C. §1622 with no
charge, 4 levels for possession of marijuana with the intent to
distribute, with no charge 18 U.S.C. §841, or 18 U.S.C. §1622,
subornation of perjury indictment in Federal Court.

Also see: United States v. Bachiero, 969 F.2d 733, (9th Cir.
1999); in this here case the 9th Circuit Court of Appeals held
that; "For purposes of calculating Petitioner's criminal history
under sentencing guidelines, three of state offenses were consolidated
for "sentencing" and were therefore, "related" even though offenses
had not been formally consolidated by state court for those offenses,

-24-

the Petitioner had received identical concurrent sentences from
Judge at same hearing. See: U.S.S.G. §4A1.2(a)(2).

When looking at the Petitioner's criminal history for
calculation of criminal history points, the P.S.I. reflects
two separate offenses and the Petitioner received two(2)
criminal history points for each of the convections, when in
fact they were consolidated for sentencing. Therefore, the
Petitioner should have received only one criminal point for
both, pursuant to U.S.S.G. §4A1.2, the Petitioner's case was
before November 1, 1991, before the amendment of intervening
arrest. See: United States v. Palmer, 946 F.2d 97, 99 (9th Cir. 1991).

The P.S.I. also shows that the Petitioner received criminal
history points before a case at the time the investigation and
the P.S.I. was prepared, was and still open. See: pg. 10 number 49,
Which reflects the case in question, the Court records will show
that the case was still open at the time of the P.S.I. was
prepared. In reference to the Petitioner's involvement in these
matters. See: Jackson v. Virginia, 443 U.S. 307, 61 L.Ed.2d 560,
99 S.Ct. 2781, also; Criminal record and the U.S. Constitution.

In United States v. Gates, 807 F.2d 1075 (D.C. Cir. 1986);
"it is improper to enhance a defendant for prior state convictions
in federal court." also; United States v. Williams, 651 F.2d 648.

The Petitioner's criminal history calculation and offense
level raises Constitutional issues, that the Petitioner now
shows were his 5th and 6th Amendment was violated that is
a right that is guaranteed by the United States Constitution,
see 3 C. Wright, federal Practice and procedure criminal 2d
§526 (2nd Ed. 1982).

The Petitioner was indicted and found guilty by a jury for
violating 18 U.S.C. §922(g)(1), felon in the possession of a
firearm and should had only received a sentence of level 24,
criminal history of three(3). This would have been 57-71 months
and he was also enhanced on charges for drugs and perjury, without
formly being indicted by a grand jury and found guilty by a jury
beyond a reasonable doubt.

The Probation officer found out that three(3) 1985 cases,
were consolidated as one, for trial and sentencing and one case
remains open since 1992. The offense level should have been level
twenty(20), criminal history one(1), which carried an imprisonment
of 33 to 41 months, instead the Petitioner was enhanced four(4)
levels for possession with intent to distribute marijuana, and
four(4) levels for possession with intent to distribute cocaine
and two(2) levels for one count of perjury. There was no lab reports
or amount of drugs, nor any mention of drugs on the original indictment,
but the Court found no "subornation." See: Jones v. United States,
119 S.Ct. 1215 (1999), also see: Apprendi v. New Jersey, S.Ct. No.
99-478 6/26/2000, that would be a jurisdiction defect in the
indictment based on Apprendi, the Due Process Clause of the 5th
and 14th Amendment requires that the government to prove the
essential elements of crime beyond a reasonable doubt. See:
Winship, 397 U.S. 358, 364 (1970). Additionally, the government
must allege all elements of a crime in the indictment.

Moreover, the Court has held that Apprendi errors occurs at
trial when a Defendant is sentenced in violation of the rule in
Apprendi. The overlooked the "subornation" in the Petitioner's
trial and amended the indictment at the time of sentencing.

-26-

In Apprendi, the Supreme Court held that "other than the fact of prior conviction, any fact that increases the penalty for a crime beyond a reasonable doubt." Apprendi, 530 U.S. at 490.

The Fifth Amendment of the United States Constitution declares that...No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, nor deprived of life, liberty, or property without due process of law... Moreover guards against violation of failure to give notice of a specific type change and the opportunity to be heard at trial on issues raised in the actual charge. The Fifth Amendment clearly establishes the Constitutional Due Process Right of every person accused of a crime.

In Cole, et. al. v. Arkansas, 333, U.S. 196, 201 (1948), the Cole Court further stated that it would be...as much a violation of due process to send an accused to prison following a conviction of a charge that was never made. Id. Also in Cole the Supreme Court followed its position on this issue as set forth in a prior case; "that a conviction based on charges that is not included in the indictment is a plain denial of due process."

The Supreme Court has also held and set new precedent which requires that any fact mentioned in the statute that result in a statutory enhancement of a criminal defendant's sentence, should be submitted to a jury as an element of the offense rather than to be determined by sentencing Judge. The Petitioner argues that in light of the Apprendi decision, a jury finding was needed on determining his guilt or innocence in regards to the alleged criminal activity used to enhance the defendant at sentencing.

-27-

See: Jackson v. Virginia, 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2701, also in Rebmann, 98-6386, 6th Civ. (8/28/2000).

In the instant case the Judge made a totally erroneous finding as to the guilt or innocence of the Petitioner concerning the alleged uncharged criminal activity surrounding the case.

The Sixth Amendment of the United States Constitution confers a right to be informed of the nature an cause of a criminal accusation, the charging document must therefore, provide notice of the charges, adequate for the preparation of a defense, it provides enough detail to permit an evaluation of a claim of double jeopardy. In the Federal Rules of Criminal Procedures Rule 7(c)(1) requires a plain and concise and entertained that are not stipulated in the indictment, and even where there is adequate notice on the face of the indictment by the grand jury, the indictment is still deficient, unless the grand jury has agreed on all of the facts that are set fourth in the document.

In the present case where the Petitioner is asserting a challenge against the indictments flaws and deficiencies regarding the lack of specific charges on which his sentence was enhanced. It is plain error that exist an a valid assertion based on the failure to set out and distinguish certain charges on which the enhancements of the Petitioner's sentence was based.

The Petitioner asserts that his Constitutional rights were violated when was the Petitioner was not formally charged in his criminal indictment to armed career criminal, returned by the Federal Grand Jury.

Petitioner's sentence was based on uncharged criminal activity

-28-

that was not returned in his original indictment by the grand
jury, nor proven beyond a reasonable doubt at trial.

Further, the Petitioner was enhanced on unripped issues
that are still unripped until this day and would request
leave to present this information to the Honorable Court
once formally resolved.

### ARGUMENT 7

District Court made plain error when enhanced the Petitioner
illegal enhancement of 4 levels for cocaine, 4 levels for marijuana
and 2 level for perjury.

The Petitioner could not have anticipated the government
and the District Court's decision to impose a 10 years upward
enhancement for drugs and subornation of perjury.

The pre-sentence report did not advocated a sentence that
exceeded the guidelines range, nor did the Probation officer make
a pre-sentencing report, that enhance Petitioner to a upward
departure, from 10 years to 22 years and 3 years supervised
release, nor did the government provide notice to the Petitioner
that they intended to depart from the guidelines at sentence
and they did not invite argument on the length of the enhancement
for drugs and/or perjury charges when the government filed their
memorandum on the day of "Sentencing."

The present case is a classic, in which the prosecutor
charged Petitioner with one crime then spent days of court
time providing other crimes that were never approved or
presented on the original indictment by the grand jury, as
to which the Petitioner had no notice in the pleadings and

-29-

no opportunity to prepare to meet through discovery or investigation on the facts that supports this practice is that the evidence proves some elements of the offense that the Petitioner may or may not even be disputing. The real purpose of such proof is to permit the jury to convict the Petitioner of a crime with which he was never charged.

This Court should review Petitioner's 28 U.S.C. §2255, based on conflict with the issue in regards to whether an indictment charging a Felon in possession of a firearm  21 U.S.C. §922(g)(1) which fails to alleging any additional element becomes a constructive amendment of the indictment and jurisdictional defect under the Fifth Amendment Grand Jury Clause, limiting the Petitioner's sentence to U.S.S.G. §2k2.1(a)(2), and whether imposition of a sentence under Title 21 U.S.C. §841, 18 U.S.C. §1622, subornation of perjury violated the Petitioner's right to be charged by the Grand Jury.

The Fifth Amendment to the United States Constitution proves in part that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of the Grand Jury.

This constructive amendment to the of the original indictment violated the Petitioner's Fifth Amendment Right to due process and should have been prevented from the on set.

In Richardson v. United States, 526 U.S. 813, 817-18, 119 S.Ct. 1708, 1710-11 (1999), "calling a particular kind of fact an element carries certain legal consequences...One such "consequence" is that the grand jury must pass upon and include that element

-30-

in the indictment. See: Jones v. United States, 526 U.S. 227,
119 S.Ct. 1215 (1999) also in: United States v. Castillo, 530
U.S. 120, S.Ct. 2090 (2000).

The Fifth Amendment Grand Jury Clause provides "that a trial
may be held in a serious Federal Criminal case only if a Grand
Jury has "first" intervened reflects centuries of antecedent
development of common law." See: Russell v. United States, 369
U.S. 749, 760-01 82 S.Ct. 1038, 1045 (1962).

The Supreme Court held that "if it lies within the province
of an indictment to suit its own notions of what it ought to have
been or what the Grand Jury would probably have made it if their
attention has been called to suggested changes, the great importance
which the common law attaches to an indictment by a Grand jury,
as aprequisite to a prisoner's trial for a crime, and without
which the Constitution says "no person shall be held to answer,"
may be frittered away until its value is almost destroyed.....
Any other doctrine would place the rights of the citizen, which
were intended to be protected by the Constitutional provision,
at the mercy or control of the court or prosecuting attorney;
for, if it be once held that changes can be made by the consent
or the order of the court in the body of the indictment as
presented by the Grand Jury, and the prisoner can be called
upon to answer to the indictment as thus changed, the restriction
which the Constitution places upon  the power of the court, in
regard to the prerequisite of an indictment, in reality no
longer exists." Id. at U.S. 770-71, at S.Ct. 1050-51, quoting
Ex Parte Bain, 121 U.S. 1, 10, 13, 7 S.Ct. 786 (1887), also
according, Strione v. United States, 361 U.S. 212, 218, 80 S.Ct.

-31-

270, 273 (1963), for this reason, an indictment can only be amended by resubmission to the Grand Jury. A Fifth Amendment violation occurs when an individual is convicted of and sentenced for an offense not charged in the indictment that was presented to the federal grand jury.

Petitioner was enhanced for drugs and perjury without a charge for drugs or perjury, as well as no drugs or lab report was present to the court to support the allegations or the enhancement, and by the court allowing constructive amendment to the Petitioner's indictment at trial caused prejudice.

The Judge violated its own ruling to the jury when the Judge gave them their instructions that "this is not a drug case and you cannot consider any other charges." Then the Judge enhanced the Petitioner on the drug charges that was not part of the original indictment, which was 18 U.S.C. §922(g)(1), Felon in possession of a firearm.

This was clear constructive amendment and violated the Petitioner's right to defend himself in a fair trial causing a Constitutional violation of the Fifth Amendment and the Petitioner's right to due process.

This constructive amendment cause a great increase in the Petitioner's sentence whereas, it increased the guideline level causing the Petitioner to receive an higher sentence. See: United States v. Mora, 22 F.3d 409, 413 (2nd Cir. 1994), a sentence that exceeds the guideline range is considered an upward departure; also see: United States v. Harotunian, 920 F.2d 1040, 1042-43 (1st Cir. 1990), defining a departure as a sentence outside the guideline range thus, when the district

court imposed a ten(10) year supervised release term, it departed
upward from the guideline sentence, requiring advance notice to
the, Burns, 501 U.S. at 138-39, and also an explanation, also
see: Cortes-Claudio, 152 F.Supp.2d at 181, the court did not
provide the parties notice of a potential upward departure.
See: Id. Burns, 501 U.S. at 135.

In Petitioner's case the Judge had to find aggravating
circumstance, with no audio tape or visual drugs and/or lab
reports as evidence, before departing upward to 22 years and
3 years supervised release. See: Eng, 14 F.3d at 171, and
United States v. Mangone, 105 F.3d 29, 35 (1st Cir. 1994),
lack of burns notice constituted plain error. 18 U.S.C.A. §3553(b).

This case should not depend on Ms. Erica Moore's statement,
because Ms. Moore made two inconsistent statements under oath a
clear violation of §1623(c).

The Petitioner suffered plain error by the court's
constructive amendment of the indictment causing him to
receive a higher sentence on the guideline by violating
his rights to due process and fair trial.

## ARGUMENT 8

### THE TRUTH UNDER OATH

Deborah Anderson's statement at her police hearing, for
the use of drugs, saying that she never purchased any drugs
from the Petitioner. Officer Anderson received a 45 day leave
from her job without pay, and had to go to a drug rehabilitation
center.

The Boston Police filed a motion to quash any subpoena of
Officer Anderson's statement's and her I.A.D. hearing as to

Pettitioner, Officer Anderson's I.A.D. hearing affidavit was
unsealed on June 10, 1999, a day before the trial, this is a
violation of the Petitioner's due process and public rights
an a brady violation rule, 18 U.S.C. §3500 Rule 17(c)(1)
violation producing documents and objects by quashing or
modifying the subpoena (2), on motion made promptly, the court
may quash or modify the subpoena if compliance would be
unreasonable or oppressive.

The government's motion for the quash of Officer Andeerson's
I.A.D. statement was because it would have hurt their case, and
Petitioner's counsel did not object to the government's motion
to officer Anderson's affidavit being sealed. Petitioner did not
get notice at the time from the court, government or Boston Police
I.A.D., or counsel was violating the Petitioner's due process
rights and aiding him ineffective assistance.

Dwayne Sawyer, told the truth when he stated that he carried
the handgun from 5 Otisfield St., to 33 Wales St., apartment 104
on the first floor in question, and he put the handgun into the
closet and removed the gun putting it under the living room sofa
and this handgun was not in plain view. Mr. Sawyer also stated
that the petitioner did not know anything about him bring the
hand gun to 33 Wales Street, and that he did not inform the
Petitioner in anyway about the handgun was in the apartment.

Mr. Sawyer was not charged with perjury or with the handgun,
but the Petitioner was charged and enhanced for the firearm as well
as for subornation of perjury. See: (Tr. 5-87-88).

Mr. Sawyer was under oath and provided the truth to the best
of his knowledge and whereas, he was not charged for perjury then

we must consed that the witness is being truthful while under
oath.

### ARGUMENT 9

Petitioner's trial counsels rendered Constitutionally ineffective
assistance as well as conflicts with decisions to proceed with
the defense.

Petitioner will show that both J. Martin Richey and Randolph
Gioia as well as Jane E. Lee using the standards of Strickland v.
Washington, 466 U.S. 668, 687 (1984), applies to evaluate claims
alleging ineffective assistance of counsels. Also United States
v. Isom, 85 F.3d 831, 837 (1st Cir. 1996), Smullen v. United
States, 94 F.3d 20-23 (1st Cir. 1996), to succeed the Petitioner
must show, that counsel's performance fell below an objective
standard of reasonableness and there is a reasonable probability
that but for counsel's error, the result of the procedings
would have been different.

Conflicts with decisions of other court's and circuit court's
failure to follow the precedence of its Supreme Court when invoked.

Petitioner's counsels was responsible for procedural default,
but Petitioner cannot be required to "bear the risk of attorney
error that resulted in the procedural default because counsels
was not acting as "Petitioner's agent" with regard to the default.

The First Circuit holds, in its denial to issue a certificate
of appealability, is contrary to the reasoning set forth in
Clay v. Director, 749 F.2d 427, 430-32 (7th Cir. 1984), cert.
denied 471 U.S. 1108 (1985), appellate counsel's failure... to
perfect what his client... indicated a desire to appeal amounted

... to ineffective assistance of counsel" and "provided sufficient cause" under sykes procedural default doctrine." See: <u>Smith v. South Carolina</u>, 882 F.2d 895, 898 (4th Cir. 1989), cert. denied, 493 U.S. 1046 (1990), "refusal of appellate counsel to raise a non-frivolous claim on direct appeal, which client wished to raised,... should be evaluated by... ineffective assistance standard; supra notes 34-39 and accompanying text "explaining the circumstance under which ineffectiveness of counsel can constitute "cause" for procedural default.

Such is the case here, whereas, ineffective assistance of counsels failure to introduce evidence as well as allowing inadmissable evidence at the time of the trial, also divulging of privileged information to the prosecutor and the refusal of government to provide the grand jury minutes, which would otherwise produce an acquittal at a new trial. See: <u>United States v. Ziniga-Salina</u>, 945 F.2d 1302, 1305, 06 (5th Cir. 1991).

This court held that the failure to introduce evidence, as well as allowing inadmissable evidence at the time of trial and divulging privileged information to the prosecutor...would otherwise produce an acquittal at a new trial. On direct examination Ms. Moore testified, that she purchased narcotics from the Petitioner with marked money, but on cross-examination by defense counsel, Ms. Moore stated she had to get her ex-boyfriend to go get her other ex-boyfriend to purchase the drugs from the Petitioner. <u>See</u>: Tr. 5 day of jury trial pg. 57-58.

Ms. Moore testified that she saw a handgun when she came on her own, when she was not working as an informant to buy drugs from 33 Wales Street, apartment 104, but turn around and than...

-36-

testified that she couldn't buy drugs from anyone in the
apartment, Petitioner's counsel never tried to impeach the
witness for the inconsistancy in her statements under oath.

On November 9, 1996, Suffolk County Assistant District
Attorney Robert D. Canty Jr. filed a complaint for fortfeiture
of the sum of one thousand, two hundred and seventy one dollars
($1,271.00) in U.S. Currency under civil action no.:96-6445F
and in January 30, 1997, Attorney Martin J. Richey was appointed
as defense counsel in this Federal case. Attorney Richey filed
assented to motion to remove default and stay the proceedings
on March 20, 1997, making him the attorney for both the federal
and state civil case.

During the federal criminal trial, attorney Richey allowed
into evidence the money from the state civil case that was an
open case, he did not object to the request of the A.U.S.A.
when he asked the court to allow the money in as evidence in the
trial and did not notify the court about a potential conflict
existed, so that the court would be able to conduct a prompt
inquiry into a potential conflicts of interests.

On October 14, 1998, attorney Richey put in a defense counsel's
assent to motion for leave to withdraw, as to allow him to withdraw
as counsel of record. It would be a conflict of interest now
existing, the conflict of interest existed when he allowed the
state case evidence to become evidence in the federal criminal
case and both cases are not the same.

Petitioner's defense counsel failed to object to the court's
constructive amendment to the original indictment and enhancing
the Petitioner's sentence.

-37-

The Supreme Court ruled that a defendant can demonstrate Sixth Amendment violation by showing (1) that defense counsel was actively respresentating conflicting interest and (2) that the conflict had adverse effect on specific instancies of counsel's performance to satisfy the two prong Cuyler test. See: Cuyler v. Sullivan, 446 U.S. 335, 64 L.Ed2d 333, 100 S.Ct. 1708, also in Strickland v. Washington, 466 U.S. 668, right to effective assistance of counsel impaired when defense counsel operates under conflict of interest because counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Further in Cuyler, 1676 446 U.S. 335 (1980), given this state of affairs a conflict of interest now exist and will continue to exist until both the cases are closed.

The Canons of Ethics and Disciplinary rules reguate the practice of law adopted by the Massachusetts Supreme Judicial (Sic) in 1974 can now set forth ethic standards.

1) By Martin J. Richey, when he gave oral testimony before trial about an amicus curiae, friend of the court, a person with strong interest in a view on the subject matter of action, but not a party to the action Dwayer Sawyer, abitrarily given to prosecutor by attorney Richey.

2) Attorney Richey gave lawyer-client privilege information to the U.S. Attorney in open court at side bar the "2nd day" of the Petitioner's trial.

3) Attorney Richey did not object to Richard Bovill taking the stand and having a warrant for his arrest.

4) Attorney Richey would not cross-examine the government's witnesses Callahan and Catello, when he knew they made false statements on the stand under oath.

-38-

5) Attorney Richey would not give Petitioner information on the Ms. Erica B. Moore's medical records, grand jury transcripts or any evidence that would help the Petitioner.

6) The Supreme Court ruling says lawyer-client privilege extends beyond death, conversation between attorney and their clients should be protected beyond the grave, a 6-3 decision.

It was also stated by Chief Justice William H. Rehenquist "it has been generally if not universally accepted for well over a century, that the attorney-client privilege survives the death of the client."

The Supreme Court outlined four four factors relevant to the determination of whether the defendant suffers injury from the intrusion (1) whether the government purposely intruded into the attorney-client relationship (1686), (2) whether any evidence offered at trial was obtained directly or indirectly from the intrusion, (3) whether the prosecutor obtained any details of the defendant's trial preparation or defense strategy, and (4) whether the overheard or told conversation has been used in anyway to the substantial detriment of the defendant.

If default occurs under these circumstances at trial or appeal, a finding of "cause" may be predicated on either of two grounds, (1) that the attorney's refusal to raise a meritorious claim desired by the client constitutes ineffectiveness of counsel, and (2) that the attorney's refusal to comply with the client's reasonable wish to raise a particular claim breached the agency relationship between attorney and client, thereby making it unreasonable to impose upon the client the consequences of the attorney's procedural default.

Appeal Counsel Jane E. Lee would not argue the enhancement issue in the Petitioner's appeal, nor would she argue the constructive amendment to the original indictment.

Unless otherwise agreed, an agent is subject to obey all reasonable directions in regard to the manner of performing a service that he has contracted to perform. See: Clemmons v. Delo, 100 F.3d 1394, 1398-99 (8th Cir. 1996), states post conviction counsel's failure to raise Brady claim did not bar federal court consideration of claim because Petitioner specifically requested that counsel raise claim and, after counsel refused to do so, Petitioner files Pro Se motion with omitted claim which state court denied without comment for decision on the merits.

Petitioner's counsel's failed to provide adequate and effective assistance within the trial and after on appeal clearly providing ineffective assistance of counsel in both the trial and at appeal.

### CONCLUSION

Based upon the facts set forth herein and in addition to the authorities cited, the Petitioner moves this Honorable Court whereas, in the interest of justice to take a good look a the Petitioner's claims set forth herein 28 U.S.C. §2255, to correct, dismiss or resentence the Pettitioner.

Lastly, Petitioner is a layman at law therefore, relies upon excusable error a Pro Se litigate to not have his motion which was drawn with unearned hands scrutinized for technical excellence practicing that legal counsels are held too.

-40-

Respectfully submitted on this 18th day of May, 2004.


William Smith #21442-038
F.M.C. Devens
P.O. Box 879
Ayer, MA 01432-0879
Petitioner / Pro Se


## CERTIFICATE OF SERVICE

I, William Smith, Petitioner, hereby certify that I have served a true and correct copy of the herein motion pursuant to 28 U.S.C. §2255, to the United States Attorneys Office via United States Postal Service by first class mail to address One Courthouse Way, Boston, Massachusetts 02210.


Signed under the pains and penalty of perjury under the laws of the United States of America that foregoing is true.


William Smith #21442-038

-41-